***********
The Full Commission has reviewed the Deputy Commissioner's Opinion and Award based on the record of the proceedings before the Deputy Commissioner; the appealing party has not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties or their representatives. Having reviewed the competent evidence of record, the Full Commission affirms the Opinion and Award of the Deputy Commission, with some modification.
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
 STIPULATIONS
1. On August 20, 1999, plaintiff sustained an injury by accident arising out of and in the course of his employment.
2. An employment relationship existed between plaintiff and defendant employer on the date of the accident.
3. Defendant employer, was insured by Zenith Insurance Company at the time of the accident.
4. All parties are subject to the jurisdiction of the North Carolina Industrial Commission, and subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
5. Plaintiff's average weekly wage is $320.00, with a compensation rate of $213.33.
6. Plaintiff was paid temporary total disability benefits for the period 8/27/99 through 9/2/99, inclusive.
7. Plaintiff was paid temporary partial disability benefits for the period 9/3/99 through 10/19/99, inclusive.
8. Plaintiff did not earn any wages from employment with the defendant employer from the period 11/2/99 through 1/17/00, inclusive.
9. Plaintiff returned to work for the defendant employer on 1/18/00.
10. Plaintiff was terminated by defendant employer on 6/14/00.
11. All forms and correspondence filed with the North Carolina Industrial Commission were received into evidence.
12. The medical records of Rowan Regional Medical Center, Salisbury Orthopedic Associates, and Stewart Physical Therapy are authentic and are received into evidence.
 ***********
Based on the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the evidentiary hearing, the Plaintiff was twenty-eight years old. He was born in Mexico and cannot read or write English. He worked as a laborer for the defendant employer, earning an average weekly wage of $320.00.
2. Plaintiff's injury occurred on August 20, 1999, when a roof gave way and Plaintiff was struck by and pinned under a truss.
3. Plaintiff was taken to Rowan Memorial Center on August 20, 1999, and was diagnosed as having suffered multiple trauma, including lumbar transverse process fractures on the right. He was treated at the hospital by James L. Comadoll, M.D., of Salisbury Orthopedic Associates.
4. Defendants allowed plaintiff to continue follow-up care with Dr. Comadoll, who became plaintiff's authorized treating physician. Plaintiff returned to work on light duty on or about September 7, 1999, and defendants executed a Form 62 agreeing to pay temporary partial compensation. Defendants did not, however, file a Form 21 Agreement or Form 60 Admission of plaintiff's claim.
5. On October 19, 1999, Dr. Comadoll recommended that the plaintiff remain on light duty for three more weeks and then return to regular duty. Plaintiff worked diminished hours during the period between October 20, 1999, and November 1, 1999.
6. By Wednesday, November 1, 1999, plaintiff's back pain and the numbness and tingling in his left leg had increased such that he was unable to work and needed to see a doctor.
7. On Thursday, November 2, 1999, plaintiff went to the emergency room and was referred to his treating orthopaedist's practice. Plaintiff was able to obtain an appointment with Dr. Steele the next day. Dr. Steele practices with Dr. Comadoll.
8. Plaintiff was examined by Dr. Steele on Friday, November 3, 1999, at which time he was immediately taken out of work and an MRI was scheduled for Monday, November 6, 1999.
9. During the period between November 2, 1999, and January 17, 2000, plaintiff did not work as advised by Dr. Steele. Plaintiff thereafter returned to work with restrictions.
10. The MRI performed on November 6, 1999, revealed an L4-5 annular tear on the left with some lateral stenosis, a diagnosis that is consistent with plaintiff's complaints of tingling and numbness in his left leg.
11. Defendants filed a Form 61 Denial of Compensation Claim form on or about 11 November 1999. However, defendants did not use the Form 61 as intended under the Commission's Rules. Rather, defendants used the Form 61 to dispute the out of work excuse from Dr. Steele. Defendants did not seek Commission approval to terminate benefits because an allegedly unauthorized physician provided the out of work note. Furthermore, defendants did not direct plaintiff to another physician, except to the extent that defendants, at that time, would acknowledge only Dr. Comadoll as the approved doctor. Dr. Comadoll, however, deferred to and approved the treatment and recommendations by Dr. Steele, his partner. Defendants did not take other affirmative steps to provide plaintiff with alternative medical treatment, at least until defendants scheduled an appointment with Dr. Loftis in April 2000. Defendants did not seek a second opinion with respect to Dr. Steele's recommendations.
12. Plaintiff was seen by Dr. Steele to review the MRI on November 16, 1999. Upon review of the MRI, Dr. Steele performed an epidural steroid injection, which did not provide relief.
13. On December 14, 1999, Dr. Steele recommended physical therapy. Defendants refused to authorize the physical therapy. Defendant carrier subsequently advised that physical therapy would be authorized if recommended by Dr. Comadoll. Nevertheless, upon receiving Dr. Comadoll's recommendation, defendant carrier stated that the written recommendation was unacceptable, and insisted that Dr. Comadoll would have to examine the Plaintiff personally.
14. Plaintiff advised defendant that he would attend an appointment with Dr. Comadoll if defendant would authorize the treatment Dr. Comadoll recommended. In response, defendants changed their position, retracting their authorization of Dr. Comadoll as the treating physician. Defendants then asserted that plaintiff was to be treated by a physician at a different orthopedic group, because defendants did not believe that Drs. Steele and Dr. Comadoll would provide the best care for Plaintiff and that another orthopaedic group would provide better care. Defendant employer's personnel manager formed this belief based on his experience in handling other claims.
15. On January 13, 2000, Dr. Steele wrote defendant carrier to explain plaintiff's ability to perform light duty work. Dr. Steele expressed that plaintiff could work no more than four hours of work per day, and that the position should require no bending, or stooping, or lifting anything more than ten to fifteen pounds. Dr. Steele expressed that sedentary desk work was appropriate.
16. In January 2000, Dr. Steele also recommended that plaintiff be examined by a spine specialist.
17. On January 18, 2000, plaintiff returned to work and worked part-time until June 14, 2000, when he was laid off. Since June 14, 2000, plaintiff has attempted but has been unable to find suitable employment within his restrictions. When plaintiff was terminated from his temporary, light duty position, he had not reached maximum medical improvement and was in need of further medical care. He was physically unable, because of his injury, to work at his regular job or obtain other suitable employment.
18. Defendants did not set up an appointment with another physician, Dr. Loftis, until April 13, 2000. Plaintiff did not attend the appointment with Dr. Loftis because he wanted to continue seeing Dr. Steele.
19. On May 22, 2000, Plaintiff filed a Motion with the Industrial Commission pursuant to G.S. § 97-25 and requested that the Commission order defendants to pay for the physical therapy being recommended by both Dr. Comadoll and Dr. Steele, and to pay for any further treatment provided by or prescribed by Dr. Steele, for the plaintiff to continue under the care of Dr. Steele, and for an award of attorney's fee for plaintiff's counsel.
20. In June 2000, defendants offered to allow plaintiff an appointment with Dr. Steele and physical therapy which Dr. Steele had recommended in December 1999. Dr. Steele responded, understandably, that defendants had ignored his recommendations and that, at this late date, referral to the spine specialist such as Dr. Leon Dickerson, Jr., would be in order. Although defendants view Dr. Steele as releasing plaintiff from his care because he had nothing left to offer, the reality is that Dr. Steele was frustrated in dealing with defendants in their denial of medical care with Dr. Steele, and Dr. Steele could not offer anything further at that time because his recommendations for physical therapy and referral to a spine specialist had been rejected months earlier.
21. On July 7, 2000, Special Deputy Commissioner Gina E. Cammarano granted plaintiff's Motion, and ordered that defendants were to pay for all medical treatment and physical therapy prescribed by either Dr. Comadoll or Dr. Steele of Salisbury Orthopedic Associates.
22. Although defendants may have had some subjective belief regarding the objectivity of Drs. Comadoll and Steele, defendants failed to acknowledge plaintiff's ongoing need for additional medical treatment, failed to offer further, alternative treatment in a timely manner, and, accordingly, failed to show that they had a reasonable basis for denying treatment and recommendations by Dr. Comadoll and/or Dr. Steele. It would appear that defendants were unhappy with Dr. Steele because Dr. Steele acknowledged plaintiff's pain complaints, provided out of work notes, and recommended further treatment, including physical therapy. However, defendants did not take any steps to obtain a second opinion to determine the validity of plaintiff's complaints and his medical needs. Rather, defendants wanted to limit plaintiff's treatment to Dr. Comadoll because Dr. Comadoll did not find any basis for plaintiff's complaints and sent him back to work. When Dr. Comadoll agreed with Dr. Steele's treatment, defendants then refused to recognize Dr. Comadoll.
23. Dr. Steele was the authorized treating physician as determined by Special Deputy Commissioner Cammerano, and the Full Commission agrees.
24. Under the circumstances of this case, and considering that the Special Deputy Commissioner denied defendants' motion to direct plaintiff to be treated by Dr. Loftis, defendants' request that plaintiff's benefits should be suspended for refusing treatment is not well taken.
25. Defendants have engaged in unfounded litigiousness and are responsible for payment of a reasonable attorney's fee to plaintiff's counsel.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. By failing to deny plaintiff's claim or pay benefits without prejudice, defendants accepted the compensability of and liability for plaintiff's claim. G.S. § 97-18.
2. Defendants unreasonably refused and/or delayed providing plaintiff necessary medical care and, therefore, have relinquished their right under the Act to direct plaintiff's medical care. G.S. § 97-27.
3. The medical care provided and recommended by Dr. Steele and the referral to Dr. Dickerson are necessary to effect a cure or give relief, and plaintiff is entitled to this treatment for his compensable back injury. G.S. 95-25.
2. Plaintiff is authorized to seek treatment from Dr. Leon Dickerson, Jr., and further treatment from Dr. Steele. G.S. § 97-25.
3. As a result of his compensable injury, plaintiff's wage earning capacity was diminished during the period from October 20, 1999, through November 1, 1999, and from January 18, 2000, through June 14, 2000, and plaintiff is entitled to temporary partial disability benefits for these periods. G.S. § 97-30.
4. As a result of his compensable injury, Plaintiff has been unable to earn any wages for the period from November 2, 1999, through January 17, 2000, and from June 14, 2000, through the present and is entitled to temporary total disability benefits for these periods. G.S. § 97-29.
5. Defendants' motion, pursuant to G.S. § 97-27, that plaintiff's benefits be suspended for refusing treatment with Dr. Loftis should be and is hereby DENIED.
6. Plaintiff's counsel is entitled to a reasonable attorney's fee in the amount of $1,500.00 because of defendants' unreasonable conduct in handling plaintiff's claim and in defending plaintiff's motion for medical treatment and subsequent appeals without reasonable grounds. G.S. § 97-88.1. The $1,500.00 attorney's fee awarded to plaintiff's counsel is to be applied as a credit against attorney's fees owed to counsel by plaintiff; therefore, the Award directs that the $1,500.00 be paid by defendant directly to plaintiff in lump sum.
 ***********
Based upon the foregoing stipulations, findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay for all medical care plaintiff has already received for treatment of his back injury when bills have been submitted pursuant to Commission procedure. This includes all treatment by Drs. Comadoll and Dr. Steele.
2. Defendants shall pay for an evaluation of plaintiff by Dr. Leon Dickerson, Jr., and any treatment recommended by him and for any treatment by a medical care provider to whom Dr. Dickerson may refer plaintiff for treatment of his back injury.
3. Subject to attorney's fees as provided below, defendants shall pay plaintiff temporary total disability benefits for the period from November 2, 1999, to January 17, 2000 and from June 14, 2000, to the present and continuing until further order of the Commission at the rate of $213.33 per week.
4. Subject to attorney's fees as provided below, defendants shall pay plaintiff temporary partial disability benefits for the period from October 20, 1999, to November 1, 1999, and from January 18, 2000, to June 14, 2000, to be paid at a rate of two-thirds the difference between the plaintiff's preinjury average weekly wage of 320.00 and the amount he actually earned. Defendants are entitled to a credit for any amount already paid for these periods.
5. A reasonable attorney's fee in the amount of twenty five percent of the accrued and ongoing compensation awarded herein in paragraphs 3 and 4 of this Award is approved for plaintiff's counsel. This amount shall be deducted from the accrued benefits owed plaintiff, and shall be paid by defendants directly to plaintiff's counsel in a lump sum. Of the continuing compensation, defendants shall send every fourth compensation check to plaintiff's attorney.
6. Defendants shall pay an additional $1,500.00 in lump sum directly to plaintiff as an offset against the the attorney's fee awarded to plaintiff's counsel above.
7. Defendants shall pay the costs.
 S/______________ RENE C. RIGGSBEE COMMISSIONER
CONCURRING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER